IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

HENRY WILLIAMS,

      Plaintiff,

v.                                        CASE NO. 5:11-cv-378-MP-GRJ

SIMMONS AND SINCLAIR,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This prisoner civil rights case, arising from an incident in which Plaintiff, a prisoner in the custody of the Florida Department of Corrections ("FDOC"), was attacked by another prisoner, is before the Court on Defendants' Motion for Summary Final Judgment. (Doc. 72.) Plaintiff has responded to the motion (Doc. 87) and the motion is therefore ripe for review. For the reasons set out below, the undersigned respectfully recommends that Defendants' Motion for Summary Judgment should be **GRANTED**.

## I. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

      Plaintiff alleges that on June 1, 2011, he was attacked by another inmate in the dining hall at Apalachee Correctional Institution – East Unit. His allegations are as follows: Two to three minutes after sitting down to eat his meal, he heard Sgt. Melvin Simmons yelling, asking another inmate what he was doing and directing the other inmate to "go back around the other way." (Dc. 5, p. 5.) When he turned to see who Defendant Simmons was yelling at, he was struck in his forehead with a hard object by

another inmate, Angel Herrera, and nearly knocked unconscious. Herrera then

grabbed Plaintiff and began swinging a homemade knife at Plaintiff's face, cutting him.

Defendant Simmons was 3-5 feet away from Plaintiff when he began yelling at Herrera

and "failed to take any immediate action to restrain Herrera. . .but instead merely stood

transfixed as [Plaintiff] was being attacked." (*Id.* at p. 6.) At the time Defendant

Simmons began yelling at Herrera, Sgt. Helen Sinclair was monitoring the serving line

approximately 30-40 feet from where Plaintiff.

Plaintiff contends that Defendants failed to prevent the attack and subsequently

failed to intervene in the attack, in violation of his Eighth Amendment rights.

Specifically, Defendant Simmons should have been able to see that Herrera was going

to attack Plaintiff and intercepted him prior to the attack. Similarly, Defendant Sinclair

should have acted to intercept Inmate Herrera prior to the attack. Both Defendants

were equipped with body alarms and canisters of chemical agents. Plaintiff alleges

that Defendants should have activated their body alarms and deployed chemical agents

to prevent the attack.

Plaintiff states that while he was in surgery after the attack, Sergeant Mack told

Officer Marshall and Plaintiff's doctor that when he entered the dining hall, Defendants

were "just f_ _ king standing there in shock, don't know what to do, scared, wasn't even

spraying this f_ _king dude, letting him f_ _k this dude up. If I wouldn't have rushed in

there, they probably would have just let this dude bleed to death." (Doc. 5, p. 9.) As a

result of the attack, Plaintiff suffered five cuts to his face and received 250 stitches in a

lengthy surgery. For relief, Plaintiff seeks $100,000.00 in compensatory damages and

$100,000.00 in punitive damages against each Defendant. (Doc. 5.)[1]

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." *Samples on Behalf of Samples v. Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). "In determining whether summary judgment is appropriate, [the Court is] required to draw all reasonable inferences in favor of the non-moving party, not all *possible* inferences." *Horn v. United Parcel Services, Inc*. 433 F. App'x 788, 796 (11th Cir. 2011) (emphasis added).

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use

---

[1] Although Plaintiff initially named an additional defendant, Warden Culpepper, and sued Defendants Simmons and Sinclair in their official capacities, the Court previously dismissed those claims. (Docs. 39, 47.) Accordingly, the only claims before the Court are Plaintiff's individual capacity claims against Defendants Simmons and Sinclair.

affidavits, depositions, answers to interrogatories, or other admissible evidence to

demonstrate that a material fact issue remains to be tried.

The Eleventh Circuit has noted that

> [i]t is well settled that "after adequate time for discovery and upon motion, [summary judgment is appropriate] against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, in response to a motion for summary judgment, a nonmoving-plaintiff must present evidence in support of his allegations sufficient to raise a genuine issue of material fact regarding each element of his claim.  As established in *Celotex,* it is not necessary for the party moving for summary judgment to introduce any evidence at all in order to prevail on his motion. Rather, in cases in which the nonmoving party will bear the burden of proof at trial, the movant can seek summary judgment by establishing that the opposing party has insufficient evidence to prevail as a matter of law, thereby forcing the opposing party to come forward with some evidence or risk having judgment entered against him. *Id.* Where the nonmoving party fails to present such evidence, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.*

*Maxi-Taxi Of Fla., Inc. v. Lee County Port Auth.,* 301 F. App'x 881, 885 (11th Cir. 2008).

Where the nonmoving party bears the burden of proof, he must offer more than a mere

"scintilla of evidence" in support of his position.  *Anderson v. Liberty Lobby*, 477 U.S.

242, 252 (1986).

### III.  DEFENDANTS' RULE 56(e) EVIDENCE (Docs. 72, 73, 74)

### A-B) Housing assignments

As of the date of the incident–June 1, 2011–Plaintiff and Herrera were both

assigned to Apalachee East Unit.  (Exhs. A, B.)

### C-D) June 1, 2011 incident report & declaration of Herrera

A June 1, 2011 incident report indicates that after being interviewed in

connection with his attack on Plaintiff, Herrera advised that his motive for the attack was that Plaintiff raped him on May 3, 2011.  He did not report the incident to staff.  (Exh. C.)  In his November 9, 2012, declaration, Herrera wrote that Plaintiff raped him approximately one week prior to the attack.  He grabbed Plaintiff by his neck and began cutting his face.  Defendant Simmons immediately ran toward Herrera and sprayed him in the eyes with pepper spray.  Herrera wrote: "If not for Sergeant Simmons' actions, I would have kept cutting inmate Williams and possibly killed inmate Williams.  My intention was to cut inmate Williams' throat, but Sergeant Simmons saved his life by putting pepper spray in my eyes."  (Exh. D.)

### E) Use of force report 111020109

A June 2, 2011 FDOC incident report prepared by Martha Jackson reflects that Herrera attacked Plaintiff in June 1, 2011 at approximately 5:30 p.m.  Defendant Simmons ordered Herrera to stop the attack, and when he did not, Defendant Simmons administered a one-second burst of chemical agents.  Herrera then complied.  Plaintiff was not exposed to chemical agents during the incident.  In a June 2, 2011 incident report prepared by Susan Driggers, Defendant Simmons described the incident similarly, in that he ordered Herrera to stop, Herrera did not, and a burst of chemical agents was administered.  Defendant Simmons recounted the same description in a June 1, 2011 report of force.

Medical records indicate that Defendant Simmons underwent a post-use-of-force exam in light of the application of the chemical agents, but had no complaints.  Herrera also received a post-use-of-force exam, but no respiratory distress or injuries were noted.  An injury diagram for Plaintiff reflected five lacerations to his face.  A

FDOC "Chemical Agent Accountability Log" shows that 4 grams of chemical agents were dispensed from canister #45 on June 1, 2011.  (Exh. E.)

### F) Defendant Simmons' declaration

Defendant Simmons' version of the incident, as explained in his July 29, 2013 declaration, is that on June 1, 2011, he was supervising the mess hall with Defendant Sinclair.  The hall is built to accommodate approximately 200 inmates.  Defendant Simmons was directing inmates from the serving line to their assigned seats, and was standing in the middle of the dining hall.  Defendant Sinclair was located in the northeast corner of the dining hall, monitoring the serving line.  At approximately 5:30 p.m., Defendant Simmons observed Herrera charge and then assault Plaintiff.  He did not initially know who Herrera was charging at and could not tell if he had a weapon until he reached Plaintiff.  Defendant Simmons observed Herrera wrap his left arm around Plaintiff's chest and make cutting motions at Plaintiff's forehead.  At approximately 5:31 p.m., Defendant Simmons ordered Herrera to stop.  When Herrera refused, Defendant Simmons administered a single, one-second burst of pepper spray at Herrera.  Defendant Simmons avers that he would normally have applied three bursts of chemical agents, but did not need to because Herrera turned and ran away after the first burst.  When Herrera released Plaintiff after the first burst of chemical agents, Defendant Simmons chased him to the west side of the hall and Herrera eventually complied with orders to lie down on the ground.  Defendant Simmons then radioed for additional assistance while another officer who had already responded restrained Plaintiff.  Defendant Simmons estimated the attack lasted less than one minute, and the entire event from the beginning of the assault to Herrera's

apprehension, lasted approximately two minutes.  (Exh. F.)

### G) Disciplinary report log # 102-111417

A disciplinary report indicates that Herrera attacked Plaintiff on June 1, 2011 at approximately 5:30 p.m.  The statement of facts, completed by Defendant Simmons the day of the incident, indicates that Defendant Simmons observed Herrera attack Plaintiff with a homemade weapon and ordered him to stop.  Defendant Simmons wrote that he "retrieved my chemical agents as Inmate Herrera ran to the back of the dining hall where I then ordered him to get on the floor and he then complied and hand restraints were applied."  Herrera pleaded guilty to aggravated battery and was sentenced to 60 days disciplinary confinement.

On June 6, 2011, Herrera wrote in a witness statement that  "The reason I cut him because a rape and I don't like rape."   In Plaintiff's June 6, 2011 witness statement, he wrote that he had not done anything wrong to Herrera and had no idea why he was attacked.  (Exh. G.)

### H) Use of force report 111020120

While being escorted from the dining hall, Herrera was attacked by another inmate.  These documents relate to the actions offers took to subdue this inmate.  (Exh. H.)

### I) Excerpts of Plaintiff's deposition

Plaintiff disputed that chemical agents were used during the attack.  Plaintiff stated that Defendant Simmons should have stepped in between Herrera and Plaintiff when he saw Herrera approaching.  He estimated there were 150 inmates screaming and yelling during the attack, which is what prompted Officer McCallister to come into

the dining hall.  Four or five officers arrived pretty quickly.  (Exh. I.)

### J) Defendant Sinclair's declaration

According to Defendant Sinclair, she was monitoring the serving line in the dining hall of Apalachee East Unit on June 1, 2011.  At approximately 5:30 p.m., she heard a commotion near the center of the dining hall and turned to observe two inmates wrestling with each other.  She observed Defendant Simmons almost immediately attempt to apply chemical agents to Herrera.  Meanwhile, Defendant Sinclair was maintaining control over the inmates near her and contacting the control room to advise the Officer in Charge that the inmates were fighting.  She estimated the attack lasted significantly less than one minute, and the entire incident lasted only a minute or two. The attack was over before she could have reasonably traveled to a position to physically intervene, and she also needed to control the surrounding inmates. Department protocol requires her to maintain control over nearby inmates so that the situation does not escalate, and allows responding officers to quickly take control of the situation.  She was never in an appropriate position to apply chemical agents to Herrera.  (Exh. J.)

### K) Plaintiff's medical records

Emergency services were activated at 5:30 p.m.  Plaintiff was awake, alert, and ambulating after the incident but had copious amounts of blood coming from the lacerations on his forehead.  He was transferred to an outside hospital for treatment and continued to receive care upon his return to Apalachee C.I.  (Exh. K.)

### L) Declaration of Robert Thompson

FDOC engineering specialist Robert Thompson stated that the dimensions of the

dining hall at Apalachee C.I. are approximately 91 feet and 4 inches by 44 feet.  (Exh. L.)

**M) Map of Apalachee C.I. East dining hall**

The drawing depicts the dining hall where the attack occurred, and notes by Plaintiff indicate that the attack occurred near the center of the hall.  Defendant Simmons was about one table away, and Defendant Sinclair was located near the corner of the dining hall at the serving line.  (Exh. M.)

**N) Video demonstrating knife attack**

This Youtube video uploaded by user "bae313" and titled "A real knife attack is likely to look like this" is a 10-second video demonstrating one individual can stab another several times in that short period of time.  (Exh. N.)

## IV.  PLAINTIFF'S RESPONSE (Doc. 87)

**A-I) Documents related to investigation of attack**

Plaintiff's documents related to the attack (Exhs. A, B, C, D, F, G, I) are identical to those submitted by Defendants in their Exhibits E and G.  Plaintiff also included two case summaries from the Bureau of State Investigations.  In the report for case number 11-1-4248, Herrera told investigators on June 1, 2011, that on May 3, 2011, he agreed to give Plaintiff oral sex to pay off a debt, but during that act, Plaintiff sodomized him against his will.  Herrera did not report the incident.  No further charges were pursued due to lack of investigative leads or evidence.  (Exh. E.)

The case summary report related to the attack on Plaintiff, case number 11-1-4142, was completed by Defendant Simmons.  He wrote that when his verbal commands to Herrera to relinquish the weapon were unsuccessful, at approximately

5:31 p.m.., he administered chemical agents to Herrera, who then complied and dropped the weapon.  (Exh. H.)

### J-K, N, V) Excerpts of Defendants' answers to Plaintiff's interrogatories

Plaintiff included 11 interrogatories answered by Defendant Sinclair in his exhibits.  Therein, Defendant Sinclair wrote that the attack lasted significantly less than one minute.  She did not recall if Plaintiff struggled to free himself from the attack. (Exh. J.)  She was located near the north end of the building, next to the serving line, when the attack occurred.  She did not recall if Defendant Simmons applied chemical agents to Herrera, but "from review of contemporaneous documents, it does not appear that Sgt. Simmons successfully applied chemical agents to Inmate Herrera during this event."  (Exh. K.)  She observed Defendant Simmons attempt to apply chemical agents during the assault, but did not believe that Defendant Simmons was able to actually apply them to Herrera.  (Exh. N.)

In situations such as the June 1, 2011 attack, Defendant Sinclair had "been trained to immediately notify the institution control room, stand by for emergency traffic, advise the Officer in Charge (OIC) of an inmate upon inmate fight in the dining hall, to notify the other officers assigned to the dining hall, and to maintain institutional control over the immediately proximate inmate population, to the extent it is possible to do so." (Exh. K.)  She had also received training on chemical agents, and the chemical agents used have a distinct smell and effect once administered.  (Exh. N.)

Plaintiff has also submitted an excerpt of Defendant Simmons' responses to Plaintiff's interrogatories.  Defendant Simmons stated that he "applied a single, one second burst of chemical agents while Inmate Herrera was attacking Plaintiff."  He did

not recall if any of the agents actually came into contact with Herrera. He did not know the maximum range of the chemical agents, and has never been reprimanded for his spontaneous use of chemical agents. He did not observe Herrera at any time prior to the assault. When he saw Herrera grab Plaintiff, Herrera was behind Plaintiff and facing Defendant Simmons. (Exh. V.)

### L) Plaintiff's informal grievance

On June 21, 2011, Plaintiff submitted an informal grievance to the Warden, stating the officers failed to prevent the attack or administer chemical agents. The grievance was denied, with the response noting that the officers immediately took out their chemical agents when they observed the assault but did not have to use them because Herrera ran to the back of the dining hall. (Exh. L.)

### M) Excerpt of Incident Report

An undated excerpt of an incident report indicates that a total of 4 grams of OC chemical agents were used during the incident, and that Herrera went through decontamination procedures after exposure. The report specifically notes that Plaintiff was not exposed to chemical agents during the incident. (Exh. M.)

### O-U) Affidavits and written deposition answers of inmate witnesses

Inmates Michael Morton, Twian Slater, Corey Fields each completed an affidavit and written deposition questions related to the incident. Morton stated in his affidavit that the officer did not do anything until the attacker was finished "slicing [Plaintiff] up and threw him to the floor." (Exh. O.) In his answers to the written deposition questions, Morton stated that he was present when Plaintiff was attacked. He did not see any of the two officers present use mace. The officers were one table away from

the attack and did not make moves to stop the attack until it was over.  (Exh. P.)

Slater attested that he remembered the other inmate (Herrera) slicing up Plaintiff and then threw him to the floor.  He did not remember any of the officers in the dining hall intervening to stop the attack other than a "Sgt. Mac" who came in the chow hall and grabbed Plaintiff and took him out of the chow hall.  (Exh. Q.)  In his answers to the written deposition questions, Slater wrote that there were two officers present during the attack, about two tables away.  He did not see any officers use mace while the attack was taking place, and they did not take any steps to intervene during the attack.  (Exh. R.)

In his undated affidavit, Fields stated that he witnessed the attack, and that during the attack, Defendant Simmons was "just standing there scared like he's in a shock yelling inmate stop. He didn't run over to try to stop the other inmate he didn't use his mace."  Defendant Sinclair did not rush over to intervene either, but was yelling at other inmates to stay back from the attack.  (Exh. S.)  In his answers to the written deposition questions, Fields stated that he witnessed the attack and that the officers originally in the dining hall did not take steps to intervene in the attack.  (Exh. T.)

Finally, inmate Yoalbe Alvaro signed a statement January 28, 2012, that he witnessed the attack from a few tables away and that Defendants did not prevent or stop the attack.  (Exh. U.)

**W) Excerpt of Plaintiff's deposition**

Plaintiff offers the single page of deposition testimony to highlight inconsistencies in reports and statements by Defendant Simmons regarding whether chemical agents were actually administered.  During the deposition, counsel for Defendants referred to a

document and stated "Well, it says Simmons - - according to this, Simmons tried to use chemical agents and nothing came out because it was a defective canister." (Exh. W.)

## V. DISCUSSION

### A. Failure to Protect

Plaintiff alleges that Defendants violated the Eighth Amendment by failing to prevent Herrera from attacking him. Specifically, he alleges that they should have taken measures at some point between Herrera's charge toward Plaintiff and the beginning of the attack on Plaintiff to prevent the attack. Plaintiff notes in his complaint that Defendant Simmons did give verbal orders to Herrera to return to his seat prior to the attack, but contends that both officers should have done more, such as administer chemical agents. (Doc. 5.) The officers do not dispute they did not administer chemical agents or move to physically intervene during the time Herrera was advancing toward Plaintiff. Defendant Simmons' declaration states that he did not know who Herrera was charging at and did not know Herrera was armed until after the attack began. (Doc. 72, Exh. F.) Defendant Sinclair's declaration states that she did not see anything until she heard a commotion and turned to see Herrera and Plaintiff in a struggle. (*Id.* at Exh. J.)

"[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)) (omission in original). "It is not, however, every injury suffered by one inmate at the hands of another that translates into a constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. For a prison official to be constitutionally liable for failing to protect the safety of an inmate, the prisoner must produce "sufficient evidence of (1) a

substantial risk of serious harm; (2) the defendant's deliberate indifference to that harm; and (3) causation." *Id.* (quoting *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995)). Deliberate indifference requires a showing that the defendant official "must have been 'subjectively aware of the substantial risk of serious harm in order to have had a sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834-38) (internal quotations omitted).

For a prison official to be liable for failure to protect an inmate, "there must be much more than mere awareness" that the attacker is a "'problem inmate' with a well-documented history of prison disobedience" and a propensity to violence. *Carter*, 352 F.3d at 1349. The official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists—and the prison official must also 'draw that inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). A "generalized awareness of risk" that an inmate is problematic "does not satisfy the subjective awareness requirement," because "merely negligent failure to protect an inmate from attack does not justify liability under section 1983." *Id.* at 1350 (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

For Defendants to be constitutionally liable for failing to protect Plaintiff from Herrera's attack, Plaintiff would have to show that Defendants were aware of specific facts supporting an inference that Plaintiff was at a substantial risk of serious harm, *and* that they actually drew such an inference. Although Plaintiff does not allege it (and even requests that any evidence related to Herrera's rape accusations be excluded), to the extent liability could attach because Defendants should have known that Herrera had a motive to attack Plaintiff, the evidence does not support a finding that Defendants

(or any other prison officials) were aware of the alleged rape. Plaintiff himself denies

that it occurred, and evidence submitted by both sides evidences that Herrera never

reported the alleged rape. (Doc. 87, Exh. E; Doc. 72, Exhs. C-D. ). Plaintiff made no

complaint to officials about a fear of Herrera prior to the attack, and stated in his June

6, 2011 witness statement that he and Herrera hadn't spoken in awhile, and he had no

idea why Herrera attacked him. (Doc. 87, Exh. C.)

To the extent Plaintiff contends that Defendants became aware of the risk, drew

the inference that Plaintiff was at risk of serious harm, and disregarded it, all in the time

it took Herrera to make his "charge" on Plaintiff, Plaintiff's own account of the facts does

not support such a conclusion. Plaintiff alleges that he heard Defendant Simmons

command Herrera to "go back around the other way," and when he turned around to

see who Defendant Simmons was yelling at, he was struck in the face. (Doc. 5, p. 5.)

Defendants clearly did not have the time to anticipate the risk to Plaintiff and disregard

in what was clearly a short period of time between Herrera's charge on Plaintiff and the

beginning of his surprise attack. Defendant Simmons did in fact attempt to prevent

Herrera from moving toward Plaintiff by ordering him to turn around. (*Id.*)

The Court therefore concludes that Plaintiff has failed to put forth evidence

supporting his claim that Defendants failed to protect him from the attack. There is no

evidence that Defendants, or any other prison officials, were aware of any specific facts

that would give rise to an inference that Plaintiff was at a substantial risk of being

violently attacked by Herrera. *Maxi-Taxi Of Fla., Inc.*, 301 F. App'x at 885.

Furthermore, Plaintiff has failed to put forth evidence that Defendants were deliberately

indifferent in the brief time period–likely just seconds according to Plaintiff's

complaint–that it took Herrera to advance on Plaintiff and begin his attack. Accordingly, summary judgment is due to be granted in favor of Defendants as to Plaintiff's failure to protect claim.

### B. Failure to Intervene

The gravamen of Plaintiff's complaint is that Defendants failed to intervene in the attack. As to Defendant Simmons, the undisputed facts demonstrate that he was located nearby the attack when it started, that he made verbal commands to inmate Herrera to stop, and that he eventually apprehended Herrera. (Doc. 5; Doc. 72, Exhs. C, D, E, F, G; Doc. 87, Exhs. A-I, S, V.) There is conflicting evidence as to whether Defendant Simmons administered or attempted to administer pepper spray on Herrera during the attack. Incident reports, use of force reports, post-use-of force exams of Herrera and Defendant Simmons, a chemical agent accountability log showing 4 grams of spray were ejected, Defendant Simmons' declaration and answers to interrogatories, and Herrera's affidavit all point to his position that he administered one burst of pepper spray to Herrera during the attack, causing Hererra to cease the attack and flee. (Doc. 72, C, D, E, F, G; Doc. 87, Exhs. A-I, V.)

However, Plaintiff offers other evidence that points to the possibility that Defendant Simmons either attempted to use the spray but the canister was defective; or that Defendant Simmons never actually administered the spray at all. For example, Defendant Sinclair answered in an interrogatory that she did not believe that Defendant Simmons was able to actually apply them to Herrera. (Doc. 87, Exh. N.) In Defendant Simmons' disciplinary report, he wrote that he "retrieved my chemical agents as Inmate Herrera ran to the back of the dining hall where I then ordered him to get on the floor

and he then complied and hand restraints were applied." (*Id.* at Exh. G.) A June 21, 2011 response from Assistant Warden Felicia Nobles to Plaintiff's informal grievance stated that "the officers did not have to use their chemical agents when they observed the assault they immediately took out their chemical agents but inmate Herrera ran to the back of the dining hall stopping his assault, and complied with all orders given by the staff. Officers immediately took out their chemical agents when they observed the assault but did not have to use them because Herrera ran to the back of the dining hall." (*Id.* at Exh. L.) Inmates who purported to witness the attack provided sworn statements that no officers administered chemical agents. (*Id.* at Exhs. O-T.) Finally, counsel for Defendant indicated during Plaintiff's deposition that according to a document, "Simmons tried to use chemical agents and nothing came out because it was a defective canister." (*Id.* at Exh. W.)

However, while Plaintiff has established that inconsistencies exist as to whether and when Defendant Simmons administered chemical agents during (or after) the attack, this, while relevant to the analysis, is not determinative. For the reasons discussed below, even if Defendant Simmons did not administer chemical agents during the course of Herrera's attack on Plaintiff, Plaintiff's failure to intervene claim still does not survive summary judgment.

An officer can be liable under the Eighth Amendment if he fails to take reasonable steps to protect an inmate from assault by an another inmate. *See Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Skritch v. Thornton,* 280 F.3d 1295, 1301 (11th Cir. 2002)). "The plaintiff has the burden to demonstrate that the defendant was in a position to intervene but failed to do so." *Ledlow*, 500 F. App'x at

914 (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)). Stated another way, an "officer who fails to intervene in a fight between inmates can only be held liable if he 'was physically able and had a realistic chance to intervene and act in time to protect the inmate Plaintiff.'" *Clary v. Hasty*, 2013 WL 4008634, at *4 (M.D. Ga. 2013) (quoting *Glispy v. Raymond*, 2009 WL 2762636 (S.D. Fla. 2009)) However, "[r]egardless of the presence or absence of a weapon in the hands of the attacking inmates, 'no rule of constitutional law requires unarmed officials to endanger their own safety in order to protect a prison inmate threatened with physical violence." *Seals v. Marcus*, 2013 WL 656873, at *8 (M.D. Ga. 2013) (quoting *Longoria v. Texas*, 473 F.3d 586, 594 (5th Cir. 2006)); *see also Prosser v. Ross*, 70 F.3d 1005, 1008 (8th Cir. 1995) ("[P]rison guards have no constitutional duty to intervene in the armed assault of one inmate upon another when intervention would place the guards in danger of physical harm.").

The undisputed facts show that Defendant Simmons, who was the closest officer to the attack, gave Herrera verbal commands to turn around just prior to the attack, and continued to issue verbal commands for the inmate to stop during the attack. It was clear that Herrera was armed with a knife-like object. It is unclear what prompted Herrera to stop the attack – much of the evidence points to the administration of pepper spray (and Plaintiff offers no other theory of why Herrera stopped) - but the evidence is clear that the attack was brief. Despite Plaintiff's assertion, Defendant Simmons did not have a realistic chance to physically intervene in the attack. Furthermore, there is no evidence that Defendant Simmons was armed, and he was not constitutionally required to intervene where doing so would put himself at serious risk of harm. Other courts

have found that in similar circumstances, an officer's verbal commands were a reasonable response to an armed inmate's attack on another inmate.

In *Sanford v. Toby,* 2013 WL 4787143, at *8 (M.D. Ga. 2013), summary judgment on a failure to intervene claim was granted in favor of defendant officers where two inmates, one armed with a razor, fought in a cell. The undisputed facts showed that the officers continued to give verbal commands until the inmates separated. "Alerted to the fact that one of the inmates was armed with a dangerous weapon, it was reasonable for purposes of the Eighth Amendment for [the defendant] to continue verbally ordering the inmates to separate." *Id.* (citing *Patmon v. Parker,* 3 F. App'x 337, 338-89 (6th Cir. 2001) (finding verbal orders to armed inmate reasonable where officials reported immediately to the scene and then removed plaintiff and inmate from the scene after the armed inmate dropped his weapon) and *MacKay v. Farnsworth*, 48 F.3d 491, 493 (10th Cir. 1995) (finding officers' attempt to break up inmate's attack on another inmate with a shank using verbal commands was reasonable while they waited for other staff to arrive).

Applying the law governing failure to intervene claims to the undisputed facts regarding Defendant Simmons' actions during the attack, Plaintiff has failed to establish that Defendant Simmons was physically able to and had a realistic chance to intervene in time to protect Plaintiff. Furthermore, the law simply does not support Plaintiff's claim that Defendant Simmons was required to put himself at risk of serious physical harm where Herrera was armed with a shank. Accordingly, summary judgment is due to be granted in Defendant Simmons' favor on the failure to protect claim.

For similar reasons, Plaintiff has failed to establish that Defendant Sinclair is

constitutionally liable for failing to protect Plaintiff from the attack. Defendant Sinclair, who was located further away from the attack than Defendant Simmons, admits that she did not intervene in the attack. In her sworn statement, she said that the attack lasted less than one minute and was over before she could have reasonably traveled to a position to physically intervene. Furthermore, she followed department protocol, which called for her to maintain control over surrounding inmates so that the situation does not escalate and so that responding officers can quickly take control of the situation. (Doc. 72, Exh. J.)

Based on the facts as viewed in the light most favorable to Plaintiff, Defendant Sinclair simply was not physically able and did not have a realistic chance of acting in time to protect Plaintiff in the fast-moving, surprise attack. By Plaintiff's own estimate, she was located 30-40 feet away from the attack. (Doc. 5.) Defendant Sinclair reasonably followed FDOC protocol during the attack by containing surrounding inmates. Defendant Simmons was located much closer to the incident and verbally commanded Herrera to stop. Furthermore, for the same reasons discussed above, Defendant Sinclair was not constitutionally required to insert herself into an inmate-on-inmate assault where one of the inmates was armed with a shank.

## VI. RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants' Motion for Summary Judgment, Doc. 72, should be **GRANTED**.

**IN CHAMBERS** this 6th day of December 2013.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**